City of Tucson is a metropolitan area in the southwestern United States.  Good morning. First case for argument this morning will be Conarski v. the City of Tucson. Please come forward. Welcome to the Ninth Circuit. For those of you who have not been here before, we have a clock here, and that's your time clock. When it says yellow, that means you're almost out of time. When it says red, it really means that you're out of time. We'll try to help you if you want to save some time for rebuttal, but please keep your eye on the clock. We have a lot of cases for argument this morning, so we're going to have to be fairly close to the time. Judge Callahan and I are pleased to welcome also our colleague, Judge Seiler, visiting us from the Sixth Circuit. Judge Seiler sits with the Ninth Circuit from time to time, and we welcome him back. You're welcome. You may proceed. Good morning, Your Honors. Good morning, Judge Seiler. I was with Judge Seiler just three weeks ago. Good morning. Before I get started, Your Honor, I'd just like to introduce my clients, the Konarskis, which are in the front row here. On the far right is Frank E. Konarski, Gabriella Konarski, and Frank E. Konarski. The last one, Your Honor, is Chris Eons. He's a colleague of mine. You're welcome. Your Honor, there are two matters in front of the Court. One of them is what we call internally the Section 8 matter, and the other one is called the whistleblower matter. They're chronological, so I'd like to talk to those in that sequence. As far as Section 8, Your Honor, for the last seven years, the Konarskis have been denied the opportunity to provide low-cost housing to Section 8 voucher recipients. Basically, what they've done, the city has decided, for whatever reason, we don't know, that administratively the Konarskis are no longer valid participants in the Section 8 program. Let's look at it, though, obviously from a court perspective, a legal perspective, not the city's necessarily. In a prior action by your clients, which I think was 01-505, the district court held that the Konarskis had no right to participate in the Section 8 program. And this Court affirmed that decision. Why doesn't that final judgment, you know, why doesn't that bar the present lawsuit? Great question, Your Honor. The reason why is because the course of conduct and the reason for that original lawsuit is because the city sent them a letter on March 5, 2001, saying you're no longer appropriate. So what the Konarskis did was they filed an ill-conceived Title VII unemployment. That's what that basis was. Our new suit is based on a 24 CFR 24760, which says you cannot bar somebody for more than a period of time. The Konarskis 2001 lawsuit would not have been right for the 24 CFR 24760 matter, simply because we had to wait for the 18 months to run. So this argument that we bring forth in the Section 8 matter goes specifically to the length of time the city has barred the Konarskis from participating in Section 8. Is that a constitutional question? No, ma'am. But what we're dealing with here is we're dealing with public funds, and the City of Tucson, as a public housing administration, they're given the duty to administer public funds. These aren't the City of Tucson funds. They're government funds. They're your or my funds. The city cannot arbitrarily decide who participates simply because they want to take your money and my money and go home. There has to be some administrative processes. We all have administrative rights. And if the government wants, if the City of Tucson wants to bar the Konarskis from participating, they have to do it administratively. They can't do it haphazardly. They can't do it arbitrarily. They can't do it capriciously. You're not bringing a constitutional case. You're bringing a case under a federal statute. That's correct, Your Honor. And what happens here is the City of Tucson, acting as an administrator for public funds, they're required to provide, I mean, if the city, if the HUD is required to follow a whole section under 24 CFR 24, 305, 306, and the whole et cetera there, Judge, they're required to give them, the City of Tucson surely is required to give that kind of due process. This argument that we have here in the Section 8 was carefully crafted to say, look, we could not have brought it in 2001 simply because it had not become ripe. The city had not barred the Konarski from participation for more than the 18 months. Now it's been seven years, Your Honor. The bottom line for here is that as far as this Section 8 lawsuit is concerned, it's a violation of civil, the civil code, the code of federal regulations that we're going under. It's not their ill-conceived lawsuit that they're entitled to Section 8. They're not. But once they've had Section 8 and it's been, and they've been debarred or suspensioned from participating in it, they can only be barred from participation for a period of time. After that, the city has to say, look, you've learned your lesson for whatever it was. We don't even know why, but we're going to let you participate again. They have to say that? If it's federal funds, yes, Your Honor. And the reason why they have to say that is because there's a whole section that says before you're going to remove somebody from participating in providing low-cost housing, it's government funds. It's not their funds. So that's why they have to do that. It's provided for everybody. If the Konarski provided unsafe and unsanitary living conditions, that's a different story, but we're not here on that. As far as the, as far as the whistleblower is concerned, the whistleblower matter originally, that suit came out of 1998 when Mr. Frank J. Konarski was beaten up by the City of Tucson Police Department. They brought in a 1983 action. What happened was, is that action, for whatever reason, I don't know, I wasn't there, but it went away. Now the City of Tucson has acted again in 2002 by basically getting one of their former city employees to set the Konarskis up, Frank J. Konarski up, to go and be criminally charged for assault. It turns out in 2004 we found out that that's not true, that Ms. Ricitti, prosecutor for the City Attorney's Office, they're the one who set up Mr. Konarski up and Mr. Craig up to set Mr. Konarski up. That's what happened in that whistleblower case. We find out later on that there's been a practice and pattern from the City of Tucson to go after Konarskis. They basically want to run them out of town. What is the date on which that claim arose? January 2002, Your Honor. And why wasn't that claim brought as part of the October 2005 lawsuit? Different parties. The parties, the Section 8 parties are the children. What happens in 2003, Mr. Frank Konarski and his wife transferred the property to the children. It's when the children tried to get, participate in Section 8 that they were denied that the Section 8 lawsuit brought up. The original matter was against Frank J. Konarski, Your Honor, which was not the lawsuit that came from the whistleblower matter. So they're two separate parties. Even though they have the same name, even the same first name, they're different parties altogether. I'd like to reserve the balance. Unless the Court's got the time, I'd like to reserve the balance of my time. It appears not.  Thank you, Your Honors. Good morning. Julie Hughes, on behalf of the defendants in Excuse me. You're going to have to speak a little louder because we can't hear you. I'm sorry. That's better. Thank you. Julie Hughes, on behalf of the appellees in Docket 0617139. The Court has consolidated these two cases. I'm only speaking on the Section 8 case. Mr. Cohen will be speaking on the other matter, and I intend to reserve 5 minutes at least, if not more, for Mr. Cohen to address those issues. And I'd like to start with pointing out that there's been a misrepresentation as to the Section 8 case. That was not brought as a Title VII case. That was an attempt by the Konarskis to obtain jurisdiction utilizing Title VII. It was a due process allegation against the City of Tucson and members of the Community Services Department alleging that they've been deprived of their right to participate in the Section 8 program as landlords. As the Court has already noted, Judge Burry dismissed this case. He addressed at length all of the issues that had been raised by the Konarskis, and he is the one that determined they had no property interest in participating as landlords, and he made the determination that because they had no property interest, there was no due process deprivation. Why did they not have a property interest? They don't have a property interest because the Section 8 program has been developed by the Federal Government to benefit low-income tenants, and they don't have a right to participate as landlords. The benefits do not go to the landlord. You say it's for the tenants, not the landlord. Yes. It's not to enrich the landlords, and there's a series of cases that address that, especially when you look at the cases that deal with the Housing Act of 1937, where it talks about the discretion that's vested in the public housing agencies. Do they have any procedural due process rights in terms of the regulations set up for those who actually provide the Section 8 housing? No. There were questions that were specifically raised at the time of the rulemaking and the regulations. There were questions asked about for landlords and for the owners as to whether or not they would have any type of process, and the Congress at that time stated that no, because the benefits were for tenants. The tenants do have procedural due process rights. They're entitled to an informal hearing if their benefits are terminated, but the landlords do not. Well, it would seem, though, just hypothetically, for that obviously at some point that let's just say that the city decided we are banning these people forever. It would seem that that would have to be problematic on some level. So I'm just wondering that you couldn't say, okay, we'll process everyone else's application, but we're never, if your name is Konarski and you have any relationship to something that happened in the past, that because your father did something, you never, you know, we're never even going to process your application. So my question then would be if the Konarskis were to file a new application to participate in Section 8 program, one that was not dependent on the prior denial, would Tucson Community Services be required to process it on the merits? Well, first, just to explain to the court, they don't file an application. The only individuals who file applications are the tenants. The landlords are, they are private landlords, and the tenants can go and find a place. So there's no application that they would ever file. In this instance, the entire Konarski family has been involved in all of these cases. They were all plaintiffs in the first case that was dismissed by Judge Burry. There are three that are in the current case. But when the determination, the administration ---- But so if a tenant applies, then if it turns out they want to live on a Konarski property, that they'll, that's that. At this point in time, given the history involving the family and their treatment of tenants, that's historically the basis of the decision to no longer contract with the Konarskis was because of multiple complaints that were made by the tenants and Section 8 housing staff. They were investigated by the Arizona Civil Rights Division, and there were determinations made that there had been discriminatory statements and treatment. Well, I know all of that. But how long does that ---- but is there ever any ---- Well, the history ---- Is it a life sentence? Is it life without possibility of parole? Or, you know, let's say my father ---- Is it a debarment? Or is it a debarment? Or is it a suspension? It's neither, because the City of Tucson is not a Federal agency, and the City of Tucson cannot debar or suspend. If there were to ---- Well, that's my question. Would they have an APA action potentially against HUD for violation of a regulation, meaning the 18-month suspension, which seems to be one of their arguments? Well, potentially. But the problem is, I think that that's barred by res judicata as well, and they've all claims against the Federal government. They've dismissed HUD from this complaint, and HUD would be the only entity that could institute a discretionary debarment or a suspension action. They could potentially have an APA claim against them. That was addressed in district court. Is Arizona ---- I mean, is the city then a pass-through for the Federal funds? Yes. We are not an agency of the Federal government. We simply manage the funds, and we are obligated to comply with Federal regulations as far as the administration of the program. But the appellants have waived that claim for purposes of this action when they specifically stated in their brief that this is only against the City of Tucson, and because the City of Tucson cannot implement a debarment or a suspension, it's not a claim that they can bring against the city. All right. Thank you. May it please the Court, Counsel. Again, I'm Gary Cohen, and I represent the appellees in the section that's been deemed the Section 1983 claim that was brought in 2006. My colleague mentioned one misrepresentation that's been made to Your Honors here this morning. I'm going to go discussing the Section 8 matter briefly. The first words out of Mr. Willimon's mouth this morning when he made his argument were that the Konarskis don't know why they're not allowed to be in Section 8 anymore. But if you read Judge Burry's order from the 2001 matter, he goes through pages and pages of the complaints against the Konarskis, at least three investigations by the Arizona Attorney General's Office, by another governmental agency. So to come into this Court and tell Your Honors that we don't know why we're not Section 8 landlords anymore is just not true. Turning back to my matter, the whistleblower matter, I want to answer Your Honors two questions that were posed to Mr. Willimon. His answers, I think, are very important and dispositive of that matter. Your Honor asked Mr. Willimon when did the claim that he's trying to keep alive in the 2006 case, when did that claim arise for statute of limitations purposes? Mr. Willimon told you, in January of 2002. So even if we ignore the res judicata argument, we ignore the prosecutorial immunity argument, we take away, ignore the issue of the trial court's discretion to preclude the Konarskis from amending their complaint under the Allen case, there's a statute of limitations problem. That claim has long since run. It's a two-year statute of limitations under the Arizona Revised Statutes 12-542, the personal injury statute of limitations, and that's pretty much it. You also, the second question Your Honor asked Mr. Willimon was why wasn't the claim that they're trying to keep alive, which, by the way, is a small sliver of an issue in a 15-page proposed amended complaint, this alleged false charges issue that, again, arose in January of 2002. Why was that not brought in 2005? And Mr. Willimon's answer to you was, well, when we amended the complaint in 2005 in the Section 8 case, the plaintiffs in that case were the Konarskis' children. They were different. He's trying to make a privity, there's no privity argument. That's what Mr. Willimon's trying to argue to you. Well, a couple points on that. Number one, when we argue the issue of res judicata and privity was briefed in the district court, remember, there was no reply to the response in the district court. There's been no reply to the answering brief filed with Your Honors. And on the privity issue, that argument about there was no privity between the plaintiffs was never raised to the district court, so it was waived. That argument's also never been raised to Your Honors here because, again, there's been no reply brief filed with Your Honors, there was no reply filed in the district court, and that issue has been waived. Did the district court make a ruling on the statute of limitations? It did not. The basis of the ruling of Judge Collins was res judicata. But we did raise all of these alternative arguments in to the district court in the briefs, and we raised them here again. And, again, they've been met with silence. And this is on summary judgment, correct? Well, no, it was a we originally filed a motion to dismiss. You filed a motion to dismiss. They withdrew the motion to dismiss. They agreed that their original complaint was invalid, and then they sought to amend the complaint, which Judge Collins denied. But getting back to my point about your question to Mr. Willimon about the privity argument, if you look at the opening brief on page 12, Mr. Willimon writes, Plaintiffs readily admit that they were substantially the same group that brought forth the claim in 2001. So besides the fact that these arguments were never raised in the district court and were never raised with Your Honors, they took the exact opposite position in the opening brief saying that the plaintiffs are all one and the same, and now I come into this courtroom here today and I hear for the first time that the children and the Konarskis are separate. I mean, this is what the city and all of these people who are married and have spouses have been dealing with the Konarskis for years, and at some point it needs to stop. This court should affirm the district court's decision to not allow the Konarskis to refile and amend a complaint, and I hope this court uses strong language in its order so that these matters can stop being brought against the city and its agents. Thank you. Thank you. In order, again, good morning. In order, again, Judge Callahan, you hit it on the nose. This is a tenant-driven program, Section 8. The city, when tenants come to the Konarskis' property and they provide a Section 8 voucher, the city refuses to investigate the apartment to prove that it's safe and sanitary. Safe and sanitary are the two conditions that are required under public housing, not anything else. And I take umbrage with this Mr. Cohen telling me that the statute of limitations has run. This is the first time it's brought up. But while the cause of action was started in January. That was brought up in the district court, was it not? No, it was not. And the reason it was not. It was brought up as part of the motion. Your Honor, the problem is that the whistleblower came forward in April of 2004. The only way that the Konarskis knew that they were set up in 2002 was because the whistleblower told them in 2004. That doesn't really answer my first question, which was this was alleged in the district court. It was not, Your Honor. The statute of limitations was not brought up. And not that I remember. The only issue that was brought up was this was a statute of limitations issue. This was a res judicata issue. That's what was brought up. This is the first time I'm hearing about statute of limitations. It was not brought up in the lower court. This is the first time we're hearing about it now. And the reason why it wasn't brought up is because the Konarskis didn't know about the whistleblower matter until April of 2004. This lawsuit was filed well before the two-year statute of limitations on that. As far as reply is concerned, as the Court is well aware, we do not need to reply. Replies are not mandatory. They're obligatory. They're precatory. If we don't reply, that doesn't mean we don't waive it. It's opening brief response. If we want to reply, that's our business. If there was nothing to reply to, then we're not going to waive it simply by not replying to it. Counsel's intimation that we waive the issue by not replying simply does not follow the case law. I'm going to ask this Court again to consider what the Konarskis have gone through. You've seen piles and piles of paper. If your office is anywhere like mine with the Konarski case, it's coming out of the seams here. And the reason why is this family, hardworking family, with children who are all valedictorian, who were hardworking, the city has a problem with them. And the Konarskis, ill-advised sometimes, they went after the city the only way they know how, to get back a modicum of their income. Right now, they're ---- And so they've never filed a federal lawsuit with HUD or in any administrative proceeding with HUD? Yes. And Ms. Hughes is exactly right. The fact of the matter is HUD never did anything against the Konarskis. They've never debarred them. They've never suspended them. This is the city acting on their own, an administrative flip of the coin to decide who participates and who doesn't participate. As far as Mr. Cohen saying that the Konarskis have pages and pages of notes, they have never had one hearing where they were able to address one issue in front of a neutral magistrate or a neutral body of any court to determine whether or not they're worthy of not participating in Section 8. This is tenant-driven, and the tenants of the city of Tucson are denies the opportunity of living in the Konarskis' property. I invite you all to come and visit. They're beautiful. I would live there, but I would just want to tell the court— That's probably a little beyond our— I understand, but I'm just telling you that right now— We'd like a trip to Arizona, but I don't— And I'm telling you, safe and sanitary, they are. And safe and sanitary is the only thing that the Public Housing Administration should be dealing with, judges, not this ambient flip of the coin. It doesn't work that way. Thank you, Your Honors. It's a pleasure to be invited again to you. Nice seeing you again, Judge Siler. We thank both parties for their arguments this morning. The cases of Konarski v. Tucson and Konarski v. Ricitti are submitted. Thank you, Your Honor. The case of Jovia-Struh is submitted on the briefs. The next case for argument is Maldonado v. Campton.
judges: McKeown, Callahan, Siler